**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DIST~~RICT OF~~**
**EASTERN D** 07CV2893

**JUDGE CASTILLO**
**MAG. JUDGE NOLAN**

BROWN & BROWN, INC.,

Plaintiff,

v.

MUHAMMAD MUNAWAR ALI,

Defendant.

Case No.

**FILED**

MAY 2 3 2007
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**VERIFIED COMPLAINT**
**FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF**

NOW COMES Plaintiff Brown & Brown, Inc., d/b/a Risk Management Services and d/b/a Program Management Services, Inc. ("Brown"), for its Verified Complaint for Injunctive Relief, Damages, and Other Relief against Muhummad Munawar Ali ("Ali"), and states as follows:

## NATURE OF THE CASE

1.     Brown brings this action to enforce its rights under its employment agreement with Ali, the former Vice President and Manager of Brown's public-entity wholesale-insurance brokerage operations.  Despite clear prohibitions in his employment agreement, Defendant Ali began soliciting Plaintiff Brown's customers almost as soon as he terminated his employment with Brown.  And he used Brown's confidential customer information to do so.  These efforts culminated with at least one major customer (over $600,000 of annual revenue to Brown) terminating its relationship with Brown with Ali's assistance.

2.     Brown brings this action to redress Ali's breach of his employment agreement with Brown and his improper scheme to usurp Brown's protected customer relationships.  In addition to money damages, Brown seeks injunctive relief to prevent Ali from continuing to

wrongfully solicit and interfere with Brown's valuable customer relationships or continuing to misappropriate Brown's confidential information.

## THE PARTIES

3.    Brown & Brown, Inc. is a Florida corporation with its principal place of business in the State of Florida at 220 South Ridgewood Avenue, Daytona Beach, Florida 32114.

4.    Muhummad Munawar Ali is a citizen and domicile of the State of Illinois with his residence located at 1715 North Rockwell, Chicago, Illinois 60647.

## JURISDICTION AND VENUE

5.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Brown and Ali are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  In particular, Ali already has usurped at least one client from Brown that previously generated over $600,000 per a year in revenue for Brown.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Ali resides in the City of Chicago, which the District Court for the Northern District of Illinois encompasses.

## STATEMENT OF FACTS

7.    Brown is a national insurance brokerage and service company.  Brown and its subsidiaries offer a broad range of insurance and reinsurance products and services, as well as risk management, third-party administration, and other services to both the public and private sectors.

8.    Because the insurance industry is so competitive, Brown realizes that its customer relationships are critical to its business and expends significant resources to develop, maintain, and expand these relationships.

9.    One of the most important ways that Brown invests in such relationships is through the training and development of its brokers. New brokers are provided with detailed confidential information about Brown's insurance services, business strategies, pricing, and customers. Brown continues its training by providing updated information as developments arise.

10.    If Brown's confidential information were to be acquired by a competitor, Brown would be put at an unfair competitive disadvantage and would face severe damage to its business operations. For instance, customer lists, which may include sales information regarding the insurance services selected, date of selection, reason for selection, and price, would allow a competitor to target specific accounts with a lower price for a similar type of insurance. Similarly, information regarding specific underwriters' requirements would enable competitors to target the business related to those underwriters. Finally, information concerning the compensation arrangements between Brown and its network of brokers, particularly commission rates and sales volume, would allow competitors to convert brokers to their organizations.

11.    Brown diligently protects and safeguards its own business interests and confidences. Among other things, Brown requires its employees to safeguard all such interests as a condition of their employment with Brown. The obligation to safeguard Brown's business interests and confidences is mandated both by its Employee Handbook and Employment Agreement.

## THE EMPLOYMENT HANDBOOK

12.    Brown's Employment Handbook subjects its employees to strict guidelines prohibiting the improper use and disclosure of confidential information. (*See* Brown Employee Handbook at 5, attached hereto as Ex. A.)

13.     For instance, this Employee Handbook specifically notes that Brown employees have access to highly confidential company information and charges Brown employees with the responsibility to keep such information confidential:

> As an essential part of our work, most of us use or have access to a large amount of corporate information. Some of this information is highly confidential and of considerable value to our Company. Those of us who possess or monitor confidential information hold a special position of trust and confidence with respect to this information.
>
> We have an important responsibility to keep confidential information within the Company until it is declassified or made public. This means the information should not be discussed with your family, relatives, or business or social acquaintances, nor should it be discussed with other employees here unless they have a clear right and need to know.

(*Id.*)

14.     Brown requires its employees to agree to and sign the Employment Handbook.

15.     Ali expressly agreed to and signed the Employee Handbook on January 13, 2003, after becoming a Brown employee. (*See* Employee Acknowledgement, attached hereto as Ex. B.)

### THE EMPLOYMENT AGREEMENT

16.     On January 13, 2003, Brown entered into an Employment Agreement ("Employment Agreement") with Brown that included both customer non-solicitation and confidentiality provisions. (*See* January 13, 2003 Employment Agreement, attached hereto as Ex. C.)

17.     While not specifically stated in the Employment Agreement, Ali focused his work as a Brown broker in the public sector, arranging insurance for entities such as school districts.

18.     The Employment Agreement's non-solicitation provision provides in part:

(b)     For a period of two (2) years following termination of Employee's employment with the Company for any reason (whether voluntary or involuntary), Employee specifically agrees not to solicit, divert, accept, nor

service, directly or indirectly, as insurance solicitor, insurance agent, insurance broker, insurance wholesaler, managing general agent, or otherwise, for Employee's account or the account or any other agent, broker, or insurer, either as officer, director, stockholder, owner, partner, employee, promoter, consultant, manager, or otherwise, any insurance or bond business of any kind or character from any person, firm corporation, or other entity, that is a customer or account of the Company during the term of this Agreement, or from any prospective customer or account to whom the Company made proposals about which Employee had knowledge, or in which Employee participated, during the last two (2) years of Employee's employment with Company.  For purposes of this Agreement, Employee acknowledges that informing existing clients or prospects that Employee is or may be leaving Company prior to leaving employment of Company shall be deemed to constitute prohibited solicitation under this Agreement.

(Ex. C at ¶ 8(b).)

19.     This provision thus prohibits Ali from soliciting, diverting, accepting, or servicing a Brown customer or account in any way, including diverting Brown's customers to his new place of employment or diverting Brown's customers to any other "agent, broker, or insurer." (Ex. C at ¶ 8(b).)  Ali need not be an employee of the insurance agency to which he diverts Brown's customers.

20.     The Employment Agreement's confidentiality provision provides in part:

(a)     Employee recognizes and acknowledges that the confidential Information (as hereafter defined) constitutes valuable, secret, special, and unique assets of Company.  Employee covenants and agrees that, during the term of this Agreement and for a period of two (2) years following termination of Employee's employment with the Company for any reason (whether voluntary or involuntary), Employee will not disclose the Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose without the express written approval of Company and will not use the Confidential Information except in Company's business.  It is expressly understood and agreed that the Confidential Information is the property of Company and must be immediately returned to Company upon demand.  The term "Confidential Information" includes all information, whether or not reduced to written or recorded form, that is related to Company and that is not generally known to competitors of the Company nor intended for general dissemination, whether furnished by Company or compiled by Employee, including but not limited to: (i)  lists of the Company's customers, insurance carriers, Company accounts and records pertaining thereto; and (ii) prospect lists, policy forms,

and/or rating information, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks, and all other types of written information customarily used by Company or available to the Employee. Employee understands that it is Company's intention to maintain the confidentiality of this information notwithstanding that employees of Company may have free access to the information for the purpose of performing their duties with Company, and notwithstanding that employees who are not expressly bound by agreements similar to this agreement may have access to such information for job purposes. Employee acknowledges that it is not practical, and shall not be necessary, to mark such information as "confidential," nor to transfer it within the Company by confidential envelope or communication, in order to preserve the confidential nature of the information.

(Ex. C at ¶ 8(a).)

21. This confidentiality provision expressly notes that Ali will obtain confidential information from Brown regarding Brown's customers, including but not limited to "(i) lists of the Company's customers, insurance carriers, Company accounts and records pertaining thereto; and (ii) prospect lists, policy forms, and/or rating information, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks . ..." (*Id.*) Other examples of Brown's confidential information are business, selling, and customer strategies and plans, and customer specifications, such as preferences, practices, idiosyncrasies, pricing minimums and maximums, usual needs, time constraints, names, and addresses.

22. Furthermore, the Employment Agreement specifically notes that any breach of the non-solicitation or confidentiality provisions could cause Brown irreparable harm, and Brown shall have the right to seek injunctive relief restraining any breach or threatened breach:

(d) In the event of a breach or threatened breach of the provisions of this Section 8, Company shall be entitled to injunctive relief as well as any other applicable remedies at law or in equity. Employee understands and agrees that without such protection, Company's business would be irreparably harmed, and that the remedy of monetary damages alone would be inadequate.

(Ex. C at ¶ 8(d) (emphasis omitted).)

23.     The Employment Agreement also provides that the prevailing party in any dispute arising under the Agreement shall recover all attorneys' fees and the costs and expenses incurred as a result of the dispute.  (Ex. C at ¶ 11.)

24.     Finally, the Employment Agreement states that it "shall be governed by and construed and enforced according to the internal laws of the State of Florida."  (Ex. C at ¶ 19.)

## ALI'S EMPLOYMENT AT BROWN

25.     Ali was hired in 2003 as a Vice President of Brown & Brown Public Entity Services, a division of Program Management Services, Inc, a wholly-owned subsidiary of Brown.  Ali was hired to market and further develop Brown's wholesale-brokerage business to public-sector insurance clients.

26.     At the time of his hiring, subject to his executing the confidentiality obligations contained in his Employment Agreement and the Brown Employee Handbook, Ali was given access to Brown's database of confidential information regarding its clients which was stored on a password-protected computer system.  Ali was given responsibility for handling and servicing current Brown clients as well as obtaining new public-sector insurance business.

27.     Brown invested substantial resources in employing Ali, including paying him a substantial amount in salary, expenses, and bonuses.  In 2006 alone, Brown paid Ali in excess of $500,000 in total compensation.  Brown also invested in office and administrative personnel to support Ali's public-sector work in Chicago, provided him with a company laptop, and paid for his cell phone service.

28.     At the time of his departure from Brown, Ali had become the "Profit Center Manager" of Brown's Chicago operations and public-sector wholesale-brokerage business and was the head of the Chicago office.

## ALI'S WRONGFUL AND ACTIONABLE CONDUCT

29.     On or about February 23, 2007, Ali provided Brown with his notice of resignation from Brown, claiming that a "focus on family" was the reason for his resignation. (*See* Termination Worksheet, attached hereto as Ex. D.)

30.     His employment with Brown ended on March 9, 2007. (*Id.*)

31.     On March 22, 2007, Brown's legal counsel Mark E. King sent Ali a letter reminding him of his obligations under the Employment Agreement, specifically noting the confidentiality and non-solicitation provisions and enclosing an extra copy of his Employment Agreement for reference. (*See* March 22, 2007 Letter from Mark E. King to Munawar Ali, attached hereto as Ex. E.)

32.     Despite his Employment Agreement's non-solicitation provision and the March 22, 2007 reminder letter, Ali used Brown's confidential information to solicit Brown's customers, and was successful in diverting at least one of them from Brown.

33.     In particular, using information received while employed at Brown, Ali contacted one of Brown's customers, the San Diego School District, and convinced it to change its broker of record from Brown to Ali's former employer, Governmental Risk Solutions.

34.     Ali negotiated the transfer with John Starich, the broker for San Diego School District, and these negotiations occurred in March or April 2007.

35.     To facilitate the transfer of its wholesaler/intermediary insurance from Brown to Governmental Risk Solutions, the San Diego School District contacted the underwriter at Liberty Mutual Insurance Company, Gene Levine, via e-mail on April 4, 2007. (*See* E-mail Chain at April 4, 2007 E-mail from John Starich to Gene Levine, attached hereto as Ex. F.)

36.     This e-mail provides, in part:

You should have received our B or R yesterday transferring our wholesaler/intermediary for the captioned from Brown & Brown to Governmental Risk Solutions. Regarding the 7-1-07 to 7-1-08 term, be advised that Mr. Ali is authorized by us to provide any necessary assistance to you, and to negotiate with you on our behalf, in developing the rate proposal for that term. ... Gene, we would ideally like to have your formal proposal transmitted to Mr. Ali for his review by April 13.

(*Id.*)

37.     The e-mail, which apparently was accidentally forwarded to Mr. Ali's former e-mail address at Brown, shows that Ali was actively involved in soliciting the business of the San Diego School District Account in violation of his Employment Agreement.

38.     Subsequently, on April 6, 2007, underwriter Liberty Mutual e-mailed Ali directly and stated that, to complete a "formal quote," Liberty Mutual needed certain information concerning the San Diego School District: the "2007/08 exposures/members and concentrations." (Ex. F at April 6, 2007 E-mail from Gene Levine to Munawar Ali.)

39.     On information and belief, Ali provided underwriter Liberty Mutual with all information about the San Diego School District that was necessary to complete the deal.

40.     Brown is no longer the broker of record for the San Diego School District; instead, Governmental Risk Solutions is now the broker of record.

41.     When the San Diego School District was a customer of Brown, the account generated over $600,000 per year in revenue for Brown and was the company's largest account out of Brown's Chicago office, where Ali was the manager.

42.     Upon learning of Ali's wrongful and actionable conduct, Brown's legal counsel Mark E. King sent another letter to Ali, again reminding him of his obligations under the Employment Agreement and demanding that he cease and desist further violations of the

Agreement. (*See* May 10, 2007 Letter from Mark E. King to Munawar, attached hereto as Ex. G.)

43.     To date, Ali has not responded to Brown's letter to deny the allegations of wrongdoing or otherwise explain his actions.

## COUNT I:  BREACH OF THE EMPLOYMENT AGREEMENT

44.     Brown repeats, realleges, and incorporates all allegations contained in paragraphs 1 through 43 as if fully restated.

45.     Ali entered into a valid and enforceable Employment Agreement with Brown.

46.     Brown has fully performed its obligations under this Employment Agreement.

47.     As a requirement of his employment with Brown and as noted in the Employment Agreement, Ali agreed to refrain, for a period of two years after termination of his employment with Brown, from soliciting, diverting, accepting, or servicing a Brown customer or account in any way, including diverting Brown's customers to a new employer or to any other "agent, broker, or insurer." (Ex. C at ¶ 8(b).)

48.     Moreover, as a requirement of his employment with Brown, as noted in the Employee Handbook and outlined in the Employment Agreement, Ali agreed to refrain, for a period of two years after termination of his employment with Brown, from using or disclosing Brown's confidential information that he obtained while employed at Brown. (*Id.* at ¶ 8(a).)

49.     As expressly noted in the Employment Agreement, Brown's confidential information includes "(i) lists of the Company's customers, insurance carriers, Company accounts and records pertaining thereto; and (ii) prospect lists, policy forms, and/or rating information, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks . ..." (*Id.*) Brown's confidential information also

- 10 -

includes business, selling, and customer strategies and plans, and customer specifications, such as preferences, practices, idiosyncrasies, pricing minimums and maximums, usual needs, time constraints, names, and addresses.

50.    The non-solicitation and confidentiality provisions protect Brown's legitimate business interests in its valuable confidential information, substantial relationships with prospective and existing customers, goodwill, and specialized training, and the provisions are entirely reasonable given the competitive nature of the insurance industry and the sensitive nature of Brown's service, financial, business, and customer information.

51.    Ali breached his Employment Agreement by soliciting Brown customers to terminate their relationship with Brown in favor of a competitor's services.

52.    One example of this solicitation is Ali's inducement of the Diego School District to change its wholesale insurance broker from Brown to Brown's direct competitor, Governmental Risk Solutions.

53.    Governmental Risk Solutions formerly employed Ali.

54.    The solicitation was memorialized in an e-mail from the San Diego School District's broker, John Starich, to his contact at underwriter Liberty Mutual, Gene Levine, which stated in part:    "You should have received our B of R yesterday transferring our wholesaler/intermediary for the captioned from Brown & Brown to Governmental Risk Solutions" and notifying the carrier that Ali was authorized to negotiate on behalf of the San Diego School District with respect to obtaining coverage. (Ex. F at April 4, 2007 E-mail from John Starich to Gene Levine.)

55.     Ali's efforts in inducing Brown's customer the San Diego School District to leave Brown were successful, and the San Diego School District no longer receives services from Brown.

56.     Furthermore, Ali breached his Employment Agreement by disclosing Brown's confidential information to Brown's direct competitor, Governmental Risk Solutions, in conjunction with the solicitation of the San Diego School District account.

57.     On information and belief, Ali is continuing to breach his Employment Agreement by directly or indirectly soliciting Brown's customers for one of Brown's competitors, Accretive Insurance Group, Inc., along with other former Brown employees.

58.     As a result of these continuing breaches by Ali, Brown has already suffered damages and will continue to do so, including damages to its customer relationships, business, and goodwill.  Such damages constitute irreparable harm for which Brown has no adequate remedy at law.

## CONCLUSION

WHEREFORE, Plaintiff Brown & Brown, Inc. respectfully requests that the Court find in favor of Plaintiff and against Defendant Muhummad Munawar Ali and:

(1)   Enter an order for preliminary and permanent injunctive relief that:

    (a)   Compels Ali to immediately return all of Brown's confidential information to Brown;

    (b)   Enjoins Ali from violating the terms of the confidentiality provision of his Employment Agreement by sharing any such information with any third party, including his former employer Governmental Risk Solutions and current employer Accretive Insurance Group, Inc.;

    (c)   Enjoins Ali from using any such information to the advantage of either his former employer, Governmental Risk Solutions, Inc., or current employer, Accretive Insurance Group, Inc.;

(d)   Enjoins Ali from violating the terms of the non-solicitation provision of his Employment Agreement with Brown by directly or indirectly soliciting, diverting, accepting, or servicing a Brown customer or account in any way;

(e)   Grants Brown any other relief as the Court deems just and appropriate;

(2)   Award a judgment in favor of Brown and against Ali;

(3)   Award Brown compensatory damages from and against Ali;

(4)   Award Brown punitive damages from and against Ali;

(5)   Award Brown its reasonable attorneys fees and costs in this matter; and

(6)   Grant Brown any other relief as the Court deems just and appropriate.

Respectfully submitted,

BROWN & BROWN, INC.

By: _____
        One of Its Attorneys

William N. Krucks
James M. Witz
Gia F. Colunga
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6000

Dated:  May 23, 2007

1344963

- 13 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BROWN & BROWN, INC.

    Plaintiff,

  v.                            Case No.

MUHAMMAD MUNAWAR ALI,

    Defendant.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Karl Snearer, declare under penalty of perjury that I am responsible for and manage Brown and Brown's Public Entity Services Business based in Chicago, Illinois. Declarant further states that I have read and reviewed Brown & Brown, Inc.'s Verified Complaint for Injunctive Relief, Damages and Other Relief against Defendant Muhammad Munawar Ali and that the allegations contained therein are true and correct to the best of my information, knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 5/23/07.

                                           _____
                                               Karl Snearer

1345020v1

# EXHIBIT A



# Employee Handbook



Brown & Brown, Inc.
220 South Ridgewood Avenue 32114-0
P.O.Box 2412 • Daytona Beach, Florida 32115
904/252-9601 • FAX 904/239-5729

## WELCOME

*Welcome to Brown & Brown, Inc.*

You have joined one of the finest organizations in the country. Our goal is to continue to be one of the "best" in our industry through the quality and excellence of our people and products.

The ultimate success of your Company will depend on your performance and that of all other employees and your efforts toward achieving our goal. How well each of us does in his or her job will bring financial returns in the form of earnings and improved benefits. Quality performance produces quality results.

Profitability will result from our customers' acceptance of our products, based in large measure on the quality of our service to customers. The quality of this service, in turn, is based on the effectiveness and productivity of all employees.

This handbook will acquaint you with both the benefits you will enjoy and the responsibilities you will assume as a member of the Brown & Brown team. While it does not cover everything (and certain items may change from time to time), this handbook will give you a general idea of Company policies and employee benefits. You are encouraged to seek further details about any item in this handbook, questions, concerns, or any other area in which you may have interest. Consult your supervisor or your Administration and Benefits Coordinator.

We sincerely hope that your relationship with Brown & Brown will be satisfying and long-lasting.

Sincerely,

J. Hyatt Brown
Chairman of the Board
President & Chief Executive
Officer

rev. 06/99

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| **WELCOME** | i |
| **EMPLOYEE HANDBOOK** | ii |
| **CONFIDENTIALITY** | iii |
| **YOUR COMPANY** | 1-1 |
| Your Company | 1-1 |
| Culture Statement | 1-2 |
| Company Structure | 1-1 |
| Employment at Will | 1-1 |
| Equal Employment Opportunity | 1-4 |
| **EMPLOYEE DUTIES & RESPONSIBILITIES** | 2-1 |
| Attendance | 2-1 |
| Personal Appearance | 2-1 |
| Smoking Policy | 2-1 |
| Political and Religious Activities | 2-2 |
| Privacy Policy | 2-2 |
| Conduct | 2-2 |
| **PERSONNEL POLICIES** | 3-1 |
| New Hire Probationary Period | 3-1 |
| Personnel Records | 3-1 |
| Time Sheets | 3-1 |
| Compensation of Pay | 3-2 |
| Attachment of Wages | 3-2 |
| Direct Deposit | 3-2 |
| Employee Vehicles | 3-3 |
| Leave of Absence | 3-3 |
| Workers' Compensation | 3-3 |
| Policy Against Harassment | 3-4 |
| Family and Medical Leave Policy | 3-9 |
| Communication Systems | 3-9 |
| **EMPLOYEE BENEFITS** | 4-1 |
| Group Health and Life Benefits | 4-1 |
| Summary of Benefits | 4-2 |
| Employee Savings Plan/401(K) | 4-4 |
| Employee Stock Purchase Plan | 4-4 |
| Vacation Days/Special Days | 4-5 |
| Personal Time Off | 4-7 |
| Holidays | 4-7 |

# EMPLOYEE HANDBOOK

This handbook is not a contract of employment. It is only a general source of information about policies, procedures, benefits and rules as they exist on the date of publication.

This handbook supersedes all prior employee handbooks and other compilations of written policies distributed by the Company. For purposes of this handbook, "Company" includes Brown & Brown, Inc. and its subsidiaries.

The Company reserves the right to change the policies, procedures, benefits and rules at its discretion at any time.

To the extent that this handbook conflicts with the law of any State in which an office of the Company is located, the law of that State shall govern the practices of such office.

Bereavement Leave          4-7
Jury Duty                  4-7
Court Appearances          4-7
Severance                  4-8
Education/Training         4-8
Personal Insurance Service 4-8
Parking                    4-8
Employee Assistance Program 4-9

rev. 06/01

## BROWN & BROWN, INC.

### Memorandum to Employees with Respect to Confidentiality and Materiality of Information

To All Employees:

As an essential part of our work, most of us use or have access to a large amount of corporate information. Some of this information is highly confidential and of considerable value to our Company. Those of us who possess or monitor confidential information hold a special position of trust and confidence with respect to this information.

We have an important responsibility to keep confidential information within the Company until it is declassified or made public. This means the information should not be discussed with your family, relatives, or business or social acquaintances, nor should it be discussed with other employees here unless they have a clear right and need to know.

Those of us who possess confidential corporate information also have a legal obligation. Under the law, a person who, during the course of his or her work, obtains confidential information that could affect the price of the Company's stock can be considered an "insider." This means he or she is subject to legal action should he or she buy or sell Company stock on the basis of the inside information until it has been disclosed. Such persons are also liable if they cause others to buy or sell the Company's shares on the basis of this information.

Although it is virtually impossible to identify clearly the confidential information likely to affect the value of the Company's stock, we can specify some general subjects: earnings, dividend declarations, significant mergers and acquisitions, major new products or services, significant new customer or vendor relationships, major personnel changes, price changes on major products, major shutdowns, unusual gains or losses in major operations, or major marketing changes.

Actually, there is no need to determine whether a particular piece of confidential information will affect the price of the Company's shares. Simply treat all corporate information with discretion and discuss confidential data only with those who have a right and need to know. In the meantime, it is wise to refrain from trading in the Company's shares until the item of inside information you possess is made public. If you have any questions on these points, please consult the Company's General Counsel.

1-1

# YOUR COMPANY

Formed in 1993 through the merger of Brown & Brown, Inc., of Daytona Beach, Florida (founded in 1939), and Poe & Associates, Inc., of Tampa, Florida (founded in 1956), Brown & Brown, Inc., brings over 90 years of solid, professional insurance experience to every customer. The Company is one of the largest independent insurance agency organizations in the United States. A publicly-owned corporation, Brown & Brown operate service offices in several states and is affiliated with other agencies which provide clients with coast-to-coast and border-to-border service.

## Culture Statement

**Brown & Brown is a lean, decentralized, highly competitive, profit-oriented sales and service organization comprised of people of the highest integrity and quality, bound together by clearly defined goals and prideful relationships.**

---

1-2

# COMPANY STRUCTURE

Brown & Brown's operations are basically divided into five principal divisions:  Retail, National Programs, Brokerage, Services/Third Party Administration and Corporate.

## Retail

The Retail Division conducts business directly with clients/customers.  This group sells the products and services offered by most of the nation's leading insurance companies, as well as specialized programs designed by Brown & Brown.  Retail offices are located throughout Florida and in Arizona, California, Indiana, Georgia, New Jersey, New Mexico, Ohio, Pennsylvania and Texas.

## National Programs

The National Programs Division consists of the Professional Programs and the Commercial Programs Divisions, and acts as an insurance company program manager for various proprietary property and casualty and benefits programs and plans developed by Brown & Brown for national professional and trade association groups. Customers of the division are independent agents nationwide, as well as Brown & Brown Retail offices, that sell these products and services to their clients.

## Services/Third Party Administration (TPA)

This division operates on a fee basis, serving companies and association groups.  The services provided primarily involve medical/health and workers' compensation claims administration.  The products offered range from fully-insured to self-insured programs.

## Brokerage

The units in this division serve the needs of other independent agents by providing for the placement of unusual and/or difficult risks, through highly selective markets.

## Corporate

The Corporate Division provides support in the area of Accounting, Analyst/Press/Media Relations, Administration and Benefits, Legal and Payroll Services.

Rev. 06/99

## EMPLOYMENT AT WILL

During the course of your employment, you are free to leave the Company at any time for any reason, and the Company reserves a similar right. Thus, both you and the Company will have the right to terminate your employment at any time, with or without advance notice and with or without cause. This is called "employment at will," and no one other than an officer of the Company has the authority to alter this arrangement, to enter into an agreement for employment for a specified period of time, or to make any agreement contrary to this policy. Furthermore, any such agreement must be in writing and must be signed by an officer of the Company.

## EQUAL EMPLOYMENT OPPORTUNITY
### Policy Statement

At Brown & Brown, Inc. our continued success depends on the full and effective recruitment and employment of qualified persons regardless of race, color, religion, sex, age, national origin, marital status, disability, or veteran status. We are committed to ensuring equal employment opportunity for all employees and applicants for employment. It is our goal to recruit, hire and develop the best employees using only job-related qualifications.

Our equal employment opportunity philosophy, in accordance with federal, state, and local law, applies to all aspects of employment with Brown & Brown including recruiting, hiring, training, transfer/promotion, compensation and benefits and termination. At Brown & Brown we strive to ensure that our human resource practices are free of discriminatory practices and that employment decisions are made on the basis of job-related qualifications, including personal competence and potential for advancement.

rev. 08/01

---

1-3

## ACHIEVEMENT, BENEFITS & COMPENSATION
### (Human Resources)

The Achievement, Benefits, and Compensation (ABC) Department welcomes you to Brown & Brown.

The ABC group is involved in many areas within the organization including staffing, compensation and benefits, training and development, payroll administration, and employee relations.

We have an "Open Door Policy." Any time you have any concerns or questions, or if a matter is of a personal nature and you would like to discuss it privately, please contact us and our staff will be more than happy to assist you.

Rev. 08/01

# EMPLOYEE DUTIES

You have joined a company that takes its responsibilities towards its employees very seriously. We want to provide a safe place to work where you can earn a fair income in pleasant surroundings. However, there is no workplace that is always free of problems. We encourage you to discuss your individual difficulties with your supervisor, the Administration and Benefits staff, or any corporate officer.

We accept our responsibility to provide good working conditions, fair compensation, and fringe benefits. In turn, we expect our employees to act responsibly and exercise their rights as individuals, as well as to perform as a real team.

## Attendance

Hours of operation vary in the different branch locations. We count on you to report on time each day. All absences or tardiness must be discussed with your immediate supervisor as soon as possible. You must call in as early as you can each day that you anticipate being tardy or absent. Excessive absences and/or tardiness will result in attendance warnings and/or termination. Attendance and tardiness are considerations at each salary review.

Absences for continuing illness, family situations, or other personal emergencies are covered in other sections of this handbook.

## Personal Appearance

Each employee is a representative of Brown & Brown, Inc. Many of our clients visit our offices. In addition, representatives of insurance companies we represent are frequent guests in our offices. We require that all employees wear professional business attire. Avoid extremes and trendy styles. If you have questions concerning dress code, please consult with your supervisor, who can provide more specific guidelines.

## Smoking Policy

With general concern as to the effects of smoking on health, your Company has adopted certain rules governing smoking on an individual office basis. Each branch office determines its own smoking policy, and many offices maintain a totally smoke-free work environment.

For your own comfort and health, as well as that of your fellow employees, you are expected to acquaint yourself with these rules and conform to them.

## Political and Religious Activities

You are encouraged to participate in political and religious activities of your choice. It is your Company's policy, however, that such activities not be practiced on Company premises.

---

# PRIVACY POLICY

The information we receive from our customers often includes nonpublic personal information about individuals, such as social security numbers, driver's license numbers, amounts of coverage requested, medical information and beneficiaries. It is the obligation of each employee to utilize such information only for business purposes, such as procuring, servicing and renewing insurance policies, and assisting with the reporting of claims. It is very important that the confidentiality and security of such information be maintained. Such information should not be shared with anyone who does not need it in order to assist our customer with his or her insurance needs. This includes other employees who are not involved with an account, as well as outside parties.

Any misuse of such nonpublic personal information will result in disciplinary action, up to and including termination of employment.

# CONDUCT

Your conduct at work is governed by certain rules that are intended to maintain good working relationships, safety, security, and effectiveness. Breaking these rules (infractions) can result in disciplinary action. Infractions which may be considered grounds for disciplinary action or termination include, but are not limited to, the following:

1.  Conflict of interest, or other conduct of such nature as to bring discredit to the Company, its employees, customers, or vendors;
2.  Disclosure of information to unauthorized persons;
3.  Unexcused and/or unexplained absences;
4.  Knowingly submitting false records on hours worked or other payroll information;
5.  Gross insubordination (such as refusing a proper work assignment);
6.  Defrauding or attempting to defraud the Company (including falsification of records);
7.  Intentional destruction or damage of Company property;
8.  Theft of Company property or of an employee's property;
9.  Consuming/under influence of alcohol or drugs during the workday;
10. Possession or sale of illegal drugs on Brown & Brown premises;
11. Conviction of a major crime.

3-1

## PERSONNEL POLICIES

As an applicant for employment, you were involved in a selection process that made every attempt to match job responsibilities with your skills and abilities. Through this process, you were offered a position, and by your own careful decision have accepted this opportunity.

### New Hire Probationary Period

The first 90 days of your employment will be considered a probationary period. During this time, your performance will be appraised to determine progress in accepting training, compatibility with the organization, and ability to meet the requirements of your position. If during this period your performance should be unsatisfactory with no prospect for improvement, your employment will be terminated. At the end of the probationary period, your supervisor will review with you your progress and discuss your future.

### Personnel Records

Your employment record begins with your application and continues to grow with other relevant documents and correspondence that become a part of your permanent record. It is also important for you to submit copies of educational certificates, diplomas, or professional certifications you receive after joining the Company.

Your employment record is filed in the office of Administration and Benefits located in the individual offices. File information is kept confidential. If you have questions or concerns about data in your file, please contact your Administration and Benefits representative.

It is important to you and to Brown & Brown that your records be kept in a current status. Please notify the Administration and Benefits office of any change in your name, address, marital status, number of dependents, phone number, educational level, or emergency contact.

### Time Sheets

All employees are required to keep an accurate record of time worked each pay period. Signing your weekly time sheets certifies that the time reported is correct. Signed time sheets must be submitted to your manager/supervisor on a timely basis. Supervisors or branch H.R. Coordinator (as determined in the individual profit center) must turn these reports into the Payroll Department in Daytona no later than the Wednesday following a payday.

### Computation of Pay

Most employees are paid current on a bi-weekly basis.

Overtime must be pre-approved by your supervisor and is paid in the following pay period. If you are a non-exempt employee, hours worked in excess of forty hours per week will be paid at time-and-one-half

Rev. 8699

---

3-2

the normal rate. Pay checks and vouchers are handed out individually on pay days. Any payroll problems should be addressed with your manager/supervisor.

### Attachment of Wages

Normally, your company will not help outside creditors in the collection of personal debts. However, under certain legal procedures, such as garnishments, levies, wage attachments or judgments, your Company is required by law to withhold specified amounts from your earnings. Should such levies be received by the Company, you will be informed about the facts concerning the order.

### Direct Deposit Plan

We are pleased to be able to offer you an important employee service that is the fastest, safest, most reliable way to deposit your payroll check.

It automatically deposits your paycheck every payday in your checking or savings account(s) (up to a total of three different accounts) at your financial institution(s). All you have to do is sign up.

Here's how Direct Deposit works:

1. Every payday you will receive an earnings statement showing gross salary, taxes, other deductions, and net pay;
2. Your money will already have been deposited in your accounts(s);
3. The amount of the deposit will appear as a credit on the account(s) statement you receive from your financial institution.

### The Advantages to You of Direct Deposit

- Keeps you out of long bank lines
- Keeps your paycheck from being lost or stolen
- Helps you become a better saver through automatic deposits to the savings account of your choice
- Makes your pay available to you in the quickest manner
- Helps protect you against overdrafts
- Saves you time, money, and aggravation

### Employee Vehicles

The use of personal vehicles on Company business is prohibited unless specific arrangements are made between the employee and the Company. Your Company will not be responsible to you for any damage or liability resulting from the operation of your personal automobile.

rev. 7/97

## Workers' Compensation

Your Company provides Workers' Compensation Insurance Benefits as required by law. Any injury on the job must be reported to your manager/supervisor or Human Resource Department. You should complete an injury report form as soon as possible.

Workers' Compensation laws are state laws. As a result, the available Workers' Compensation benefits will vary from state to state.

## Leave of Absence

The Company may grant a leave of absence to an employee who has completed his/her first six (6) months of employment. Leaves may be granted up to six months and are for medical, military, educational, and personal reasons.* All leaves must be pre-approved and a written Leave of Absence form must be completed with the understanding that the position is not guaranteed upon anticipated return from leave. At the end of your leave, if granted, every attempt will be made to place you in the same position. If not available, another position may be offered.

*Refer to the Family and Medical Leave Act for details on a Leave of Absence.

---

## POLICY AGAINST HARASSMENT

The Company is committed to providing a workplace free of sexual harassment as well as harassment based on such factors as race, color, religion, national origin, ancestry, age, medical condition, marital status, handicap, or veteran status. The Company strongly disapproves of and will not tolerate harassment of employees by managers, supervisors, or co-workers.

Harassment includes verbal, physical, and visual conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Some examples include racial slurs, ethnic jokes, posting of offensive statements, posters, or cartoons; or other similar conduct. Sexual harassment includes solicitation of sexual favors; unwelcome sexual advances; or other verbal, visual, or physical conduct of a sexual nature.

Any incident of harassment, including work-related harassment by any Company personnel or any other person, should be reported promptly to the employee's supervisor or manager and to the Director of Human Resources at 1-800-477-2769 in Daytona Beach, Florida. The Company emphasizes that an employee is not required to complain first to his or her supervisor if that supervisor is the individual who is harassing the employee. Any employee wishing to report a complaint must, however, contact the Director of Human Resources, who is responsible for investigating the matter. Managers who receive complaints or who observe harassing conduct should likewise inform the Director of Achievement, Benefits & Compensation.

Every complaint of harassment that is reported to the Director of Human Resources will be investigated thoroughly, promptly, and in a confidential manner. In addition, the Company will not tolerate retaliation against any employee for making such a complaint.

In the case of Company employees, if harassment is established, the Company will discipline the offender. Disciplinary action for a violation of this policy can range from verbal or written warnings to immediate termination, depending upon the circumstances.

rev. 6/01

## FAMILY AND MEDICAL LEAVE POLICY

It is the policy of Brown & Brown, Inc. (Brown & Brown) and its subsidiaries to grant up to 12 weeks of leave during any 12 month period to eligible employees working in offices where 50 or more employees are employed by Brown & Brown within 75 miles for the birth of a child and subsequent childcare, the placement of a child for adoption or foster care, the serious health condition of a spouse, child or parent, or for the employee's own serious health condition. The leave may be paid, unpaid, or a combination of both as specified in this policy.

### Eligibility

To qualify for family and medical leave, the employee must meet all of the following conditions:

- The employee must have worked for Brown & Brown for at least 12 months (52 weeks). Any accrued leave taken will count toward the 12 months or 52 weeks.

- The employee must have worked at least 1250 hours during the 12 month period immediately before the date when the leave will begin.

To be eligible for family and medical leave, the employee must be taking the leave for one of the following reasons:

- the birth of a child and to care for a child following birth;

- the placement of a child for adoption or foster care;

- to care for a spouse, child, or parent with a serious health condition; or

- the qualifying serious health condition of the employee.

An employee's serious health condition is one that leaves the employee unable to perform the functions of the employee's job. A serious health condition is defined as a condition that requires inpatient care at a hospital, hospice, or residential medical care facility, or a condition that requires continuing care by a licensed health care provider as defined in the federal Family and Medical Leave Act of 1993. In general, a chronic or long term health condition that, if left untreated, would result in a period of incapacity of more than three days, would be considered a serious health condition. Questions about what illnesses are covered under this policy should be directed to the human resource department. If an employee takes paid leave for a condition that progresses into a serious health condition and the employee requests unpaid leave as provided under this policy, Brown & Brown may designate all or some portion of related leave taken as leave under this policy, to the extent that the earlier leave meets the necessary qualifications.

An eligible employee can take up to 12 weeks of leave under this policy during any 12 month period. Brown & Brown will measure the 12 week period as a "rolling" 12 month period measured backward from the date an employee uses any leave under this policy. Each time an employee takes leave, Brown & Brown will compute the amount of leave the employee has taken under this policy and subtract it from the 12 weeks of available leave, and the balance remaining will be the amount the employee is entitled to take.

If a husband and wife both work for Brown & Brown, and each wishes to take leave for the birth of a child, adoption or placement of a child in foster care, or to care for a parent (but a parent-in-law) with a serious health condition, the husband and wife may take only a combined total of 12 weeks of leave.

### Requesting Leave

All employees requesting family or medical leave must submit a completed "Application for Family and Medical Leave" form to the human resources department, with a copy to their immediate supervisor.

The employee must give the company 30 days notice, if possible. If it is not possible to give 30 days notice, the employee must give as much notice as is practicable. An employee undergoing planned medical treatment is required to make a reasonable effort to schedule the treatment to minimize disruptions to the Company's operations.

If an employee fails to provide 30 days notice for foreseeable leave with no reasonable excuse for the delay, the leave request may be denied until at least 30 days from the date the employer receives notice.

### Certification of Serious Health Conditions

Brown & Brown requires certification of the serious health condition of the employee or employee's family member. The employee should try to respond to such a request within 15 days, or provide a reasonable explanation for the delay. Failure to provide certification may result in a denial of continuation of leave. Medical certification should be submitted on the Medical Certification form provided by Human Resources.

Certification of the serious health condition shall include the following:

- the date when the condition begins;
- the condition's expected duration;
- a diagnosis; and
- a brief statement of treatment.

For medical leave for the employee's own medical condition, the certification also must include a statement that the employee is unable to perform work of any kind or a statement that the employee is

3-7

unable to perform the essential functions of the employee's job. For a seriously ill family member, the certification must include a statement that the patient requires assistance and that the employee's presence would be beneficial or desirable.

If the employee plans to take intermittent leave or work a reduced schedule, the certification also must include dates and the duration of treatment and a statement of medical necessity for taking intermittent leave or for working a reduced schedule.

Brown & Brown reserves the right to ask for a second opinion. Brown & Brown will pay for the employee to get a certification from a second doctor selected by Brown & Brown. If necessary to resolve a conflict between the original certification and the second opinion, Brown & Brown will require the opinion of a third doctor. Brown & Brown and the employee will jointly select the third doctor and Brown & Brown will pay for that opinion. The third opinion will be final.

In addition, re-certification of the medical necessity of the leave will be required every thirty (30) days; and upon return, the employee must provide medical certification that the employee is able to return to work.

**Use of Paid and Unpaid Leave**

An employee who is taking leave because of his or her own serious health condition must use all accrued leave, including paid vacation/special days, and "bank" days prior to being eligible for unpaid leave. Leave taken under the short-term disability plan or a workers' compensation claim will be deducted from the 12 week leave period specified by the act.

An employee who is taking leave for the serious health condition of a family member or the adoption or foster care of a child must use all paid vacation/special days, and "bank" days prior to being eligible for unpaid leave.

**Intermittent Leave or Reduced Work Schedule**

The employee may take family and medical leave in 12 consecutive weeks, may use the leave intermittently (taking a day periodically when needed during a year), or under certain circumstances, may use the leave to reduce the work week or work day, resulting in a reduced-hour schedule. In all cases, the leave may not exceed a total of 12 weeks over a 12 month period.

Brown & Brown may temporarily transfer an employee to an available alternative position with equivalent pay and benefits if the alternative position would better accommodate the intermittent or reduced schedule.

For the birth, adoption, or foster care of a child, Brown & Brown and the employee must mutually agree to the schedule before the employee may take the leave intermittently or work a reduced-hour schedule. Leave for birth, adoption, or foster care of a child must be taken within one year of the birth or placement of the child.

3-8

If the employee is taking leave for a serious health condition, or because of the serious health condition of a family member, the employee should try to reach agreement with Brown & Brown before taking intermittent leave or working a reduced-hour schedule. If this is not possible, the employee must prove that the use of the leave is medically necessary.

**Status and Benefits During Leave**

While an employee is on leave, Brown & Brown will continue the employee's health benefits at the same level and under the same conditions as if the employee had continued to work. However, employees do not accrue any seniority or employment benefits during the leave period.

If the employee chooses not to return to work for reasons other than a continued serious health condition, the company will require the employee to reimburse Brown & Brown the amount it paid for the employee's health insurance premiums during the period of leave.

While on paid leave, Brown & Brown will continue to make payroll deductions to collect the employee's share of the premium. While on unpaid leave, the employee must continue to make this payment, either in person or by mail. The payment must be received in the Daytona Human Resources department by the 20th day of each month. If the payment is more than 30 days late, the employee's health care coverage may be dropped for the duration of the leave.

If the employee contributes to life insurance, disability plan or is making elective payroll deductions (i.e. 401(k) loan payments, voluntary AD&D and supplement life), Brown & Brown will continue making payroll deductions while the employee is on paid leave. While the employee is on unpaid leave, the employee must continue to make those payments, along with the health care payments. If the employee does not continue these payments, the company may discontinue coverage during the leave period, or will recover the payments at the end of the leave period, in a manner consistent with the law.

While on leave, an employee is required to report to his/her department manager every thirty (30) days regarding the status of the medical condition and his/her intent to return to work.

**Status After Leave**

An employee who takes leave under this policy will be able to return to the same job or a job with equivalent status, pay benefits, and other employment terms. The position will be the same or one that requires substantially equivalent skill, effort, responsibility, and authority. However, an employee who is among the highest paid 10 percent of all the employees within 75 miles of the employee's worksite, may not be reinstated to the same of similar position if the restoration would cause substantial and grievous economic injury to the operations of Brown & Brown. In such cases, Brown & Brown will notify the employee as soon as the determination is made that reinstatement is not available.

Employees who do not return to work at the end of the leave period will be treated as having voluntarily terminated employment.

Rev. 06/99



# COMMUNICATION SYSTEMS

Brown & Brown, Inc. (Brown & Brown) maintains communication services and equipment necessary to promote the efficient conduct of its business. Every employee has a responsibility to maintain and enhance the Company's public image, and to use the communication systems in a productive manner.

## Communication Systems

Communication equipment and services include mail, courier services, electronic mail, facsimiles, telephone systems, computer hardware, software and networks, computer files, internet services, video equipment and tapes, tape recorders and recordings, pagers, cellular phones and bulletin boards.

All Company communication services and equipment, including the messages composed, sent, received or stored by them are the sole property of the Company. Brown & Brown reserves the right to review, audit, intercept, access and monitor employee communications and files as it considers appropriate.

To prevent computer viruses from being transmitted through the communication systems, there will be no unauthorized installing or downloading of any software. All software installations or downloads should be downloaded by the individual responsible for the communication systems at that branch.

## Personal Use

Employees should limit their personal use of company communications services and equipment. Personal communications that incur user charges should be placed on a collect basis or charged directly to the employee's personal credit card or account. Employees should exercise care so that no personal correspondence appears to be an official communication of the Company.

## Communications

Each employee is responsible for the content of all text, audio or images that they place or send over the communications systems. The confidentiality of any message should not be assumed. Even when a message is erased, it is still possible to retrieve and read that message. Further, the use of passwords for security does not guarantee confidentiality.

## Copyright Issues

Copyrighted materials, trade secrets, proprietary financial information, or similar materials may not be transmitted (uploaded) or received (downloaded) by employees without prior authorization. One copy of copyrighted material may be downloaded for your own personal use in research. Employees are not permitted to copy, transfer, rename, add or delete information or programs belonging to other employees unless given express permission to do so by the owner.

## Improper Use

Improper use includes, but is not limited to, any misuse as described in this policy as well as use:

- for personal gain or advancement of individual views to solicit or proselytize for commercial ventures, religious or political causes, outside organizations, or other non-job-related solicitations.

- to create any harassing, offensive or disruptive written, recorded or electronically transmitted message. Among those which are considered offensive are any messages which contain sexual implications, racial slurs, gender-specific comments, or any other comment that offensively addresses someone's age, sexual orientation, religious or political beliefs, national origin, or disability,
- to transmit any abusive, profane or offensive language,
- to retrieve or read any messages that are not sent to an employee, or access to a file, or retrieve any stored information maintained by another employee.

## Violations

Improper use of Company communications services and equipment, and failure to observe copyright or license agreements may result in discipline, up to and including termination. If appropriate the Company will advise appropriate law enforcement officials of any illegalities.

4-1

## EMPLOYEE BENEFITS

Generally, employees who work at least 30 hours per week are eligible to participate in the benefit programs offered by Brown & Brown. The Employee Stock Purchase Program and the Brown & Brown Retirement Savings Program 401(k) are available to employees working fewer than 30 hours per week. Complete details regarding our benefit programs can be found in the *Overview of Employee Benefits* booklet.

A brief summary of benefits and cost to employees as of January 2001 is presented on the following pages. All benefits and costs may be subject to change from time to time.

4-2

### BROWN & BROWN
### SUMMARY OF BENEFITS

| Benefit | Cost to Employee | Effective Date | Other |
|---|---|---|---|
| Medical Coverage Refer to Medical Plan Tab | | | |
| Dental Coverage | Employee Only 11.00 per pay Employee + Spouse $22.00 per pay Employee + Child(ren) 24.50 per pay Family $35.00 per pay | 30 day waiting period 1st day of following month | $50 deductible for each covered person 100%/80%/50% coverage depending on the service Benefit Year limit - $1,000 |
| Group Term Life (Includes Accidental Death & Dismemberment) | 50% of premium based on 2X annual salary | 30 day waiting period 1st day of following month | $250,000 maximum benefit |
| Employee Voluntary Life | 100% of premium based on 1 to 5X's annual salary and age | 30 day waiting period 1st day of following month | $1,000,000 maximum benefit |
| Spouse Voluntary Life | 100% of premium | 30 day waiting period 1st day of following month | 50% of Employee coverage. Maximum $100,000 coverage |
| Child Voluntary Life | $1.25 premium per pay | 30 day waiting period 1st day of following month | $10,000 benefit |
| 24-Hour Accidental Death-Dismemberment | 100% of premium on selected benefit amount and coverage | 30 day waiting period 1st day of following month | Employee and Family Plan |
| Short-Term Disability | None | 30 days from date of hire | 30-day qualifying period 75% of salary Producer employees 100% of salary or 100% of pay per compensation agreement |
| Long-Term Disability | 50% of premium based on annual salary | 30 day waiting period 1st day of following month | 90-day qualifying period The lesser of 60% of salary or $12,000 |

## RETIREMENT SAVINGS PLAN

### Employee Savings Plan/401(k)

Your Company has a Employee Savings Plan commonly referred to as a 401(k) Plan.

Participants may contribute to the Plan on a pre-tax basis by deferring a portion of their salary in accordance with certain provisions of U.S. tax law. Your Company contributes an amount equal to your contribution subject to a maximum of 2 1/2 percent of your salary. The Company may make an annual discretionary profit sharing contribution for all employees under the profit sharing provisions of the Plan. This contribution is determined by the Board of Directors on a year-by-year basis.

*For specific details on the Employee Savings Plan and the Employee Stock Purchase Plan, see the appropriate section of this handbook.

### EMPLOYEE STOCK PURCHASE PLAN

Brown & Brown, Inc. offers an Employee Stock Purchase Plan. Once each year, an employee may elect to purchase shares of the Company's common stock at a discount of 15% of the market value of shares at the beginning or at the end of a 12-month subscription period. Each individual's participation is limited to a maximum of 10 percent of his/her base compensation.

*For specific details on the Employee Savings Plan and The Employee Stock Purchase Plan, see the appropriate section of this handbook.

rev. 06/99

## BROWN & BROWN
## SUMMARY OF BENEFITS

| Benefit | Cost to Employee | Effective Date | Other |
|---|---|---|---|
| Flex Plan | Pre-tax contributions | 30-day waiting period 1st day of following month | Annual election |
| $250 Flexible Spending Account | None | 30-day waiting period 1st day of following month | Annual election |
| Employee Savings Plan (401k) | Pre-tax contributions up to 15% of salary or $10,000 | 30-day waiting period 1st day of following month. Must be 18. | Employer matches your contributions up to 2.5% of your salary. Employer may make discretionary profit sharing contribution. 5-year vesting. 14 investment options. Loans permitted. |
| Employee Stock Purchase Plan | up to 10% annual salary may be deducted. | 30-day waiting period 1st day of following month | Company common stock purchased at 15% discount of the fair market value.** |
| Workers Compensation | None | Date of Hire | Job-related disability |
| Other Benefits | | | Vacation/Special Days Holidays Bereavement Leave Tuition Reimbursement |
| Employee Assistance Program | None | Date of Hire | Counseling service for employees and immediate family. |

*Employee premium payments are based on 24 pay periods
**The purchase price is the lower of the fair market value on the first day or the last day of the offering period.

## Severance

The standard severance package is two weeks pay at 100% of current rate plus payment at 75% for any vacation/special days bank time accrued. Severance will be paid to those full-time employees (excluding commissioned producers) who are terminated due to layoffs. Individuals who voluntarily resign or are terminated for reasons other than a layoff are not entitled to severance.

Commissioned producers paid in arrears are not entitled to severance pay, but will receive during the subsequent month the commissions earned in the last month's production.

## Education/Training

Brown & Brown encourages the pursuit of job-related education and training. Such courses must be approved in advance by your manager/supervisor in order to be eligible for reimbursement.

## Personal Insurance Service

Your Company is an independent insurance agency. Employees have the opportunity to place personal insurance (home, auto, life, recreational vehicles, boats, etc.) through the Company. You are encouraged to check with the appropriate personnel in your office.

In most cases, coverage placed through your Company are available to employees at the Company's cost.

## Parking

Your Company endeavors to provide economical parking for all employees. Availability depends on the office location. In some locations the company subsidizes parking if free parking is not available.

---

## Personal Time Off

Time off for personal reasons may be taken when approved by your manager/supervisor. Short periods of time off may be made up outside of normal work hours; however, the make-up of time must be completed during the week in which the personal time is taken and must be reported on your record of time.

## Holidays

Your Company observes the following paid holidays. Full-time employees who work at least 40-hours per week will receive pay at his or her regular rate. Employees working less than 40-hours per week will be paid on a pro-rata basis, based on the average number of hours worked in a week. If a holiday falls on a part-time employee's regularly scheduled day-off, he/she would not receive holiday pay.

| | |
|---|---|
| New Year's Eve - 1/2 day | Thanksgiving Day |
| New Year's Day | The Friday after Thanksgiving |
| Memorial Day | Christmas Eve - 1/2 day |
| Independence Day | Christmas Day |
| Labor Day | |

## Bereavement Leave

Depending on individual circumstances such as relation to the deceased, travel time, etc., you will be granted up to a three-day leave of absence with pay in the event of the death of an immediate family member. (Spouse, parent, grandparent, sibling, child, in-law or relative you live with).

Extenuating circumstances may require more than the allowed three days. Additional time off will be handled on an individual basis as determined between you and your supervisor/manager.

Requests for time for attendance at other funerals, the length of time requested and whether paid or personal time, will be decided by the employee's manager, based on the relationship of the deceased to the employee.

## Jury Duty

There may come a time when you are called for jury duty. This is a privilege as well as a civic duty. Your Company recognizes this and will give you full maximum pay while you are on jury duty. You may retain any fee received. An employee is expected to report for work when actually serving on an impaneled jury or otherwise required to stay.

## Court Appearances

Court appearances as a defendant, plaintiff or witness, unless Company-related, are considered personal leave without pay.

4-9

# The Employee Assistance Program

We know that you, the employee, are our most valuable asset. We are concerned with your happiness, job satisfaction, and productivity in the workplace.

We understand that ups and downs are a normal part of life, but sometimes problems seem to get out of hand and people find themselves caught up in worry and stress. At these times, short term professional counseling can help people regain their perspective and optimistic outlook on life.

The *Employee Assistance Program* is designed to help with a broad range of human problems such as emotional, family and marital, alcohol and/or drugs, and other personal problems. The overall objective of this program is to promote the employee's well-being. Problems of a personal nature can adversely affect all facets of an employee's life, but these problems can be dealt with successfully when appropriate care is provided.

Here's how the program works:

- The program is available to all employees and immediate family members on a SELF-REFERRAL basis. Any employee may contact the Employee Assistance Program with total CONFIDENTIALITY, at (800) 272-7252 or (407) 788-8122.

- Utilization of the program will not jeopardize an employee's job security, promotional opportunities, or reputation.

- Supervisors may encourage the use of the Employee Assistance Program when an employee's personal problems cause unsatisfactory job performance. Follow-up will be made to supervisors to inform of utilization of services ONLY and release of even this information requires the employee's consent. *No personal details will be discussed.*

For additional information, please contact the office of Administration and Benefits.

We are pleased to provide this benefit for you. It is our sincere hope that it will be of service to you and your family should the need arise.

# EXHIBIT B





# Employee Acknowledgement

I acknowledge that I have received the Brown & Brown, Inc. Employee Handbook. I have, or will, read the Handbook and agree to conform to the rules and regulations of Brown & Brown, Inc. as described in the handbook. I understand this Handbook is intended as a guide to human resource policies and procedures and that the company has the right to change the Handbook without notice. It is understood that future changes in policies and procedures will supersede or eliminate those found in this book, and that employees will be notified of such changes through normal communication channels.

I have been made aware that full legal summaries for all benefit plans are available on the employee benefits website or via my branch HR/Payroll coordinator. I have also been made aware of my rights regarding "continuation coverage" (COBRA) and I have shared this information with my dependents.

I also understand and agree that the information contained in these materials does not constitute an employment contract between Brown & Brown, Inc. and me, and that either I, or Brown & Brown, Inc., may terminate our employment relationship at any time, with or without cause.

_Muhammad Munawar Ali_

**Employee Signature**

_1-13-03_

**Date**

_M. MUNAWAR ALI_

**Employee Name (please print)**

# EXHIBIT C

**BROWN & BROWN, INC.**

**EMPLOYMENT AGREEMENT**

THIS **EMPLOYMENT AGREEMENT**, dated ___January 13___, 2003 (this "Agreement"), is made and entered into by and between **BROWN & BROWN, INC., d/b/a Risk Management Services, and d/b/a Program Management Services**, a Florida corporation (the "Company"), and ___M. Milina was Ali___ (the "Employee")

1.     Definitions. "Company" means Brown & Brown, Inc. as well as any successor entity formed by merger or acquisition, including any company that may acquire a majority of the stock of Brown & Brown, Inc. and, with respect to **Sections 8, 9 and 10** hereof, also means its subsidiaries, affiliated companies and any company operated or managed by the Company as of the time this Agreement is entered into, and as of the time the Agreement is terminated. With respect to **Section 9** hereof, "Employee" also means any company or business in which Employee has an equity interest or a controlling or managing interest.

2.     Employment  The Company hereby employs or continues to employ Employee upon the terms and conditions set forth in this Agreement

3.     Term  The term of the Agreement shall be continuous until terminated by either party, except that termination shall be subject to the provisions of **Section 7**, below.

4.     Extent of Duties  Employee shall work full time for the Company and shall also perform such duties as specified from time to time by the Company. During the term of Employee's employment under this Agreement, Employee shall not, directly or indirectly, engage in the insurance business in any of its phases, either as a broker, agent, solicitor, consultant or participant, in any manner or in any firm or corporation engaged in the business of insurance or reinsurance, except for the account of the Company or as directed by the Company. Unless otherwise agreed, Employee shall devote all of Employee's productive time to duties outlined in this Section 4 and shall not engage in any other gainful employment without written consent of the Company.

5.     Compensation.

      (a)  If the Employee is a Producer, then Employee's compensation will be based on the commission system in effect and applicable at this time to the undersigned. Employee acknowledges that the commission structure has been explained to Employee, and understands that the system may be changed at any time upon  notice to Employee.

      (b)  If the Employee is not a Producer, then Employee's compensation shall be as agreed between Company and Employee from time to time

6     Benefits  Employee shall be entitled to enjoy the same benefits as conferred upon any other employees of comparable rank within the Company  This includes plans such as life and health insurance, sick pay, paid vacation and employee discounts  Employee acknowledges that the

applicable benefits have been explained to Employee. Employee understands that such benefits are provided by the Company at the Company's discretion and may be changed, increased, decreased or eliminated from time to time. Employee also understands that the Company reserves the right to approve business development and entertainment privileges on a case-by-case basis to Producers based upon the discretion of management, without granting equal or equivalent privileges to other Producers

7.      Termination. The employment relationship memorialized by this Agreement may be terminated by Company or Employee at any time, with or without cause. Termination of Employee's employment under this Agreement shall not release either Employee or the Company from obligations hereunder arising or accruing through the date of such termination nor from the provisions of **Sections 8, 9 and 10** of this Agreement.   On notice of termination of or by the Employee, the Company has the power to suspend the Employee from all duties on the date notice is given, and to immediately require return of all professional documentation as described in the Agreement.   Company has the further right to impound all property on Company premises, including such property owned by Employee, for a reasonable time following termination, to permit Company to inventory the property and ensure that its property and trade secrets are not removed from the premises. Employee acknowledges that Employee has no right or expectation of privacy with respect to property kept on Company premises, including any such information maintained on computer systems utilized by Employee during employment by Company

8.      Confidential Information; Covenant Not to Solicit or Service Customers or Prospective Customers; Related Matters.

(a)     Employee recognizes and acknowledges that the Confidential Information (as hereafter defined) constitutes valuable, secret, special, and unique assets of Company. Employee covenants and agrees that, during the term of this Agreement and for a period of two (2) years following termination of Employee's employment with the Company for any reason (whether voluntary or involuntary), Employee will not disclose the Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose without the express written approval of Company and will not use the Confidential Information except in Company's business It is expressly understood and agreed that the Confidential Information is the property of Company and must be immediately returned to Company upon demand. The term "Confidential Information" includes all information, whether or not reduced to written or recorded form, that is related to Company and that is not generally known to competitors of the Company nor intended for general dissemination, whether furnished by Company or compiled by Employee, including but not limited to: (i)  lists of the Company's customers, insurance carriers, Company accounts and records pertaining thereto; and (ii) prospect lists, policy forms, and/or rating information, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks, and all other types of written information customarily used by Company or available to the Employee. Employee understands that it is Company's intention to maintain the confidentiality of this information notwithstanding that employees of Company may have free access to the information for the purpose of performing their duties with Company, and notwithstanding that employees who are not expressly bound by agreements similar to this agreement may have access to such information for job purposes. Employee acknowledges that it is not practical, and shall not

2

be necessary, to mark such information as "confidential," nor to transfer it within the Company by confidential envelope or communication, in order to preserve the confidential nature of the information

(b)     For a period of two (2) years following termination of Employee's employment with the Company for any reason (whether voluntary or involuntary), Employee specifically agrees not to solicit, divert, accept, nor service, directly or indirectly, as insurance solicitor, insurance agent, insurance broker, insurance wholesaler, managing general agent, or otherwise, for Employee's account or the account of any other agent, broker, or insurer, either as officer, director, stockholder, owner, partner, employee, promoter, consultant, manager, or otherwise, any insurance or bond business of any kind or character from any person, firm, corporation, or other entity, that is a customer or account of the Company during the term of this Agreement, or from any prospective customer or account to whom the Company made proposals about which Employee had knowledge, or in which Employee participated, during the last two (2) years of Employee's employment with Company. For purposes of this Agreement, Employee acknowledges that informing existing clients or prospects that Employee is or may be leaving Company prior to leaving employment of Company shall be deemed to constitute prohibited solicitation under this Agreement.

(c)     Employee agrees that Company shall have the right to communicate the terms of this Agreement to any third parties, including but not limited to, any past, present or prospective employer of Employee  Employee waives any right to assert any claim for damages against Company or any officer, employee or agent of Company arising from disclosure of the terms of this Agreement.

(d)     In the event of a breach or threatened breach of the provisions of this **Section 8**, Company shall be entitled to injunctive relief as well as any other applicable remedies at law or in equity.  Employee understands and agrees that without such protection, Company's business would be irreparably harmed, and that the remedy of monetary damages alone would be inadequate

(e)     Should legal proceedings (including arbitration proceedings) have to be brought by the Company against the Employee to enforce this Agreement, the period of restriction under this **Section 8** shall be deemed to begin running on the date of entry of an order granting the Company preliminary injunctive relief and shall continue uninterrupted for the next succeeding two (2) years.  The Employee acknowledges that the purposes of this **Section 8** would be frustrated by measuring the period of restriction from the date of termination of employment where the Employee failed to honor the Agreement until directed to do so by court order.

(f)     The provisions of this **Section 8** shall be independent of any other provision of this Agreement, and the existence of any claim or cause of action by the Employee against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this **Section 8** by the Company

(g)     Should a court of competent jurisdiction declare any of the covenants set forth in this **Section 8** unenforceable, each of the parties hereto agrees that such court shall be empowered and shall grant Company injunctive relief reasonably necessary to protect its interest.

9.     Organizing Competitive Businesses; Soliciting Company Employees.   Employee agrees that so long as Employee is working for Company, Employee will not undertake the planning or organizing of any business activity competitive with the work Employee performs Employee agrees that Employee will not, for a period of two (2) years following termination of Employee's employment with the Company for any reason (whether voluntary or involuntary), directly or indirectly solicit or seek to induce any of the Company's employees to leave the Company's employ for any reason, including, without limitation, to work for Employee or any other competitive company.   Employee acknowledges and agrees that all activities under this Section 9 shall be presumed to be in aid of prohibited solicitation under the terms of **Section 8** of this Agreement, and shall justify injunctive relief as provided in **Section 8**.

10     Protection of Company Property   All records, files, manuals, lists of customers, blanks, forms, materials, supplies, computer programs and other materials furnished to the Employee by the Company, used by Employee on its behalf, or generated or obtained by Employee during the course of Employee's employment, shall be and remain the property of Company. Employee shall be deemed the bailee thereof for the use and benefit of Company and shall safely keep and preserve such property, except as consumed in the normal business operations of Company   Employee acknowledges that this property is confidential and is not readily accessible to Company's competitors.   Upon termination of employment hereunder, the Employee shall immediately deliver to Company or its authorized representative all such property, including all copies, remaining in the Employee's possession or control.

11.     Attorneys' Fees.   In the event of a dispute concerning the terms of this Agreement, or arising out of the employment relationship created by this Agreement, the prevailing party shall be entitled to recover, in addition to any other remedy obtained, (a) all attorneys' fees incurred in the investigation and preparation of issues for trial and in the trial and appellate proceedings, and (b) costs and expenses of investigation and litigation, including expert witness fees, deposition costs (appearance fee and transcript charges), injunction bond premiums, travel and lodging expenses, arbitration fees and charges, and all other reasonable costs and expenses.

12.     Notices.   Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by Certified Mail to:

Employee at:

2701 N. Mildred #2A
Chicago, IL 60614

4

and to the Company at:

> Brown & Brown, Inc.
> 401 E. Jackson Street, Suite 1700
> Tampa, FL 33602
> Attn: Laurel L. Grammig
> General Counsel

or such other address as either shall give to the other in writing for this purpose.

13.     Waiver of Breach. The waiver by either party of a breach of any provision of the Agreement shall not operate or be construed as a waiver of any subsequent breach by the other party.

14.     Entire Agreement. This instrument contains the entire agreement of the parties. All employment agreements entered into which are dated prior to this Agreement are considered null and void, unless and to the extent otherwise stated herein. This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

15.     Binding Effect. This Agreement shall be binding on and inure to the benefit of the respective parties and their respective heirs, legal representatives, successors and assigns. No assignment, consent by Employee, or notice to Employee shall be required to render this Agreement enforceable by any entity defined as "Company" in this Agreement.

16.     Interpretation This Agreement shall not be construed or interpreted in a manner adverse to any party on the grounds that such party was responsible for drafting any portion of it

17.     Waiver of Jury Trial. Employee and Company hereby knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation related to or arising out of, under or in conjunction with this Agreement, or Employee's employment with the Company.

18.     Assignment. Employee agrees that Company may assign this Agreement to any entity in connection with any sale of some or all of Company's assets or subsidiary corporations, or the merger by Company with or into any business entity.

19.     Governing Law This Agreement shall be governed by and construed and enforced according to the internal laws of the State of Florida, excluding laws related to conflicts of law.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

Witnesses:

**BROWN & BROWN, INC.**

By: _____

Print Name: _Elizabeth Messimer_

Title: _Controller / HR Coordinator_

As to Company

Witnesses:

**EMPLOYEE**

Signature: _____

Print Name: _M. Munawar Ali_

As to Employee

JHF:\FORMS\EMP_AGM I\FL_RETAI.DOC

# EXHIBIT D



**Brown & Brown INSURANCE**

## TERMINATION WORKSHEET

Please email this form to
Payroll@bbins.com for the personnel file.

Name: M. MUNAWAR ALI    File #: 988652

Address: 1715 N. ROCKWELL CHICAGO IL 60647    ☐ Check if new address
Ask employee to notify you with any change in address after termination to update ADP for W-2.
Telephone No : (773) 727-5512    Effective Date: 03/09/07    Dept/Branch: 181 200
Date Notice Given: 02/10/07   23    Last Day Worked: 03/09/07

| ACTION = TER | | REASON CODE -- CIRCLE ONE | |
|---|---|---|---|
| **VOLUNTARY QUIT** | | **DISCHARGE** | |
| DAT | Death | DBL | Unable to Return from Disability |
| DCB | Dissatisfied with Comp./ Benefits | EXC | Excessive Absences/Tardiness |
| DSS | Dissatisfied with Supervisor | FAL | Falsification of Records |
| DTW | Dissatisfied with Type of Work | LAY | Layoff |
| FAI | Medical/Failure to return from LOA | MDI | Misconduct: Dishonesty, insubordination, etc. |
| JOB | Job Abandonment | OIV | Other -- Involuntary |
| LOC | Dissatisfied with Location | PRF | Poor Performance |
| NEW | New Employment | TMP | Temporary/ Summer Work |
| (OTH) | Other -- Reason: FOCUS ON FAMILY | VPL | Violation of Company Policy |
| REL | Relocation | | |
| RTR | Retirement -- under age 64 | | |
| VRS | Voluntary Resignation in Lieu of Termination | | |
| WOR | Dissatisfied with Work Conditions | | |

| RETIREMENT -- Employee is age 64 and over. | | | |
|---|---|---|---|
| **ACTION** | | **REASON CODE** | |
| RET | | RET | Retirement -- over age 64 |

Would you rehire? (Choose only one)  Yes _____   No **X**

Brown & Brown policy is to pay 75% of the accrued and unused vacation balances
to employees who voluntarily resign and provide a two week notice (unless otherwise required by state law)
In the event a position is eliminated (Layoff) 100% of accrued PTO will be paid

Exempt: PTO Pay: Hours ___Ø___ and Earnings ___Ø___ (Enter both in Rapid Pay Grid)

Non-Exempt: PTO pay: Hours: _____ (Enter only hours in Rapid Pay Grid)

If a termination occurs in first pay period of the month, please list all benefits and additional amounts to be deducted below  (Do not
include 401(k) deferrals or Stock.)  This will assist you with entering in the ADP/Enterprise system

Please see the View Paychecks Instructions in the Payroll Manual available online to verify Ded Code/Amt

Ded Code _____ Amt _____      Ded Code _____ Amt _____

Ded Code _____ Amt _____      Ded Code _____ Amt _____

Ded Code _____ Amt _____      Ded Code _____ Amt _____

Ded Code _____ Amt _____      Ded Code _____ Amt _____

*Severance Pay is only offered in exchange for a signed separation agreement.  You must contact your Leadership Development
Specialist for assistance!
**_All final paychecks will be in the form of a live check._**

| HR | AUTHORIZATION | |
|---|---|---|
| PEL | | |
| Signature | 3/12/07 | BRODERICK BALDWIN |
| | Date | Print Name |

Revised 12/06

# EXHIBIT E



**Brown & Brown, Inc.**
220 South Ridgewood Avenue (32114)
P.O. Box 2412 ▪ Daytona Beach, FL 32115
386/252-9601 ▪ FAX 386/239-5729

Direct Line: (386) 239-5782  (800) 877-2769 Ext. 5782
Direct Fax: (386) 239-7293
E-mail: meking@bbins.com

MARK E. KING
*Senior Litigation Counsel*

*Licensed in Alabama and*
*The District of Columbia*

March 22, 2007

**<u>Via Certified Mail (Return Receipt Requested)</u>**

Munawar Ali
1715 North Rockwell Avenue
Chicago, IL 60647

Dear Mr. Ali:

It is our understanding you have recently resigned your employment with Brown & Brown, Inc.  While we wish you well personally, we want to take this opportunity to remind you of the terms of the Employment Agreement which you signed with Brown & Brown effective January 13, 2003.  Enclosed is a copy of the Agreement for your reference.

Specifically, we want to call your attention to the confidentiality, non-solicitation and non-compete covenants in Section 8 of the agreement.  We expect that you will abide by the terms of this Agreement.

Sincerely,

Mark E. King

MEK:ale

cc:    Powell Brown
       Karl Snearer

# EXHIBIT F

## James Parker

| | |
|---|---|
| **From:** | Levine, Gene [Gene.Levine@LibertyMutual.com] |
| **Sent:** | Friday, April 06, 2007 9:29 AM |
| **To:** | Munawar Ali |
| **Cc:** | Walter, Timothy |

**Subject:** FW: San Diego CO Schools Workers' Compensation Program

Mun-In order for a formal quote, we need the following.

We need to 2007/08 exposures/members and concentrations.
    Ground up 5 years losses, currently valued.

---

**From:** John Starich [mailto:JStarich@johnburnham.com]
**Sent:** Wednesday, April 04, 2007 4:56 PM
**To:** Levine, Gene
**Cc:** dcrosler@sdcoe.k12.ca.us; m.munawar.ali@gmail.com
**Subject:** San Diego CO Schools Workers' Compensation Program

Dear Gene:
You should have received our B of R yesterday transferring our wholesaler/intermediary for the captioned from Brown & Brown to Governmental Risk Solutions.

Regarding the 7-1-07 to 7-1-08 coverage term, be advised that Mr. Ali is authorized by us to provide any necessary assistance to you, and to negotiate with you on our behalf, in developing the rate proposal for that term. The JPA is aware of and concurs with this arrangement.

Gene, we would ideally like to have your formal proposal transmitted to Mr. Ali for his review by April 13.

Thank you, Gene. Please call me if you have any questions or concerns.

John C. Starich, ARM, CIC
Senior Vice president, Commercial Insurance
John Burnham Insurance Services, Inc.
A Division Of UnionBanc Insurance Services, Inc.
CA license no. 0619252
phone: 619-525-2803 fax: 619-525-1870
starich@johnburnham.com

5/10/2007

# EXHIBIT G



**INSURANCE** ®

**Brown & Brown, Inc.**
220 South Ridgewood Avenue (32114)
P.O. Box 2412 ▪ Daytona Beach, FL 32115
386/252-9601 ▪ FAX 386/239-5729

Direct Line: (386) 239-5782 ▪ (800) 877-2769 Ext. 5782
Direct Fax: (386) 239-7293

MARK E. KING
*Senior Litigation Counsel*

*Licensed in Alabama and*
*The District of Columbia*

May 10, 2007

**Via Certified Mail (Return Receipt Requested)**

Munawar Ali
1715 North Rockwell Avenue
Chicago, IL 60647

      Re:    Compliance with Employment Agreement

Dear Mr. Ali:

It is our understanding that you have recently breached the restrictive covenants in your Employment Agreement with Brown & Brown, Inc. d/b/a Risk Management Services and d/b/a Program Management Services (the "Company") dated January 13, 2003 (the "Agreement"). Specifically, you are in violation of the covenants relating to confidential information, non-solicitation of customers or prospective customers and protection of Company property.

Your Agreement does not prohibit you from working for a competitor or from selling insurance. It simply prohibits you from, directly or indirectly, soliciting, diverting, accepting or servicing any insurance business of a Company customer or Company prospect for two (2) years immediately following termination of your employment with the Company. Thus, it permits you to remain in the insurance agency business after the termination of your employment, while at the same time protecting the business, goodwill and confidential information belonging to the Company.

In addition, your Agreement provides that you are to refrain from disclosing the Confidential Information of the Company (as defined in the Agreement) and that you will return all of the Company's records, files, manuals, lists of customers, blanks, forms, materials, supplies, computer programs and other materials to Company upon termination.

We expect you to honor the terms of your Agreement. Similarly, we expect that your employer will refrain from acquiring, much less using, any confidential or proprietary information that you may have acquired or had access to during your employment with the Company. In case you did not retain a copy of the Agreement, enclosed is a copy so that you may familiarize yourself with the referenced provisions as well as the other provisions relating to your post-employment activities.

Munawar Ali
Page 2 of 2
May 10, 2007


In the event that you do not immediately cease and desist from further violations of your Agreement and return all Company property in your possession, the Company intends to pursue all legal and equitable remedies against both you and your employer. Nothing herein should be considered to be a waiver of the Company's right to pursue legal or equitable remedies for violations of your Agreement which have already occurred.

Sincerely,

Mark E. King

MEK:ale

Enclosure

cc:     Powell Brown
        Karl Snearer, via U. S. Mail